Your Honor, this case boils down to one essential element. Does smuggling goods from the United require the government to prove the defendant had knowledge that he was smuggling or attempting to smuggle ammunition? The Fifth Circuit in Cardenas says the answer to that is yes. Cardenas was decided in January of 2016. Sotomayor Cardenas didn't actually address that precise issue. It talks about ammunition, but it was undisputed that it was ammunition, wasn't it? Well, the government proved that up, certainly, in Cardenas. But Cardenas also followed there about four unpublished opinions that the Cardenas court deemed persuasive, and I believe the answer was yes in all four of those opinions. And then they finally — so this is a well-thought-out decision in Cardenas that I believe actually said specifically, and the quote in Cardenas, which I refer to many times in my brief, is that we determined that to establish an offense under 554A, the government is required to prove only that the defendant knew he was dealing with ammunition and that that was intended for export and that the exportation was illegal. They just didn't — In other words, here you've teed up this argument that you ask the district court, he has to know what's the item, it has to be specifically ammunition. Now you've raised it to us on appeal. I didn't see that issue being raised in Cardenas. Again, Your Honor, I believe that it was raised in the cases before, and then they slightly distinguished that from Bernardino, which they indicated in Cardenas. But I believe that that's — that opinion does stand for the proposition. Roberts. We're not bound by what the Fifth Circuit said. Of course not. It's merely persuasive judgment. So why should we adopt your argument? Well, because I think it comes down to the criminal history category — excuse me, the base offense level for the 554A charge I think is an 8. So if you're a criminal history category 1, that allows you to, you know, potentially get probation. The base offense level for exportation of munitions is a 26. And I think because of the — What does that have to do with the text of the statute in order to which he was convicted, which was section 554? Well, the point of this case and the point of my appeal is that it wasn't just 554A. It was 554A in conjunction with 2778. And therefore, because it's much more — it's a much more specific charge — But he was convicted of 554. Well, he was — Correct? Well, the string site — no, frankly, he was convicted of 554. And the string site in the indictment was 554A along with 2778. And because it's a much more specific charge and because the base offense level is that much more high, where if you're convicted — I thought 27 — was it 2778? Yes, sir. Is that the other one? I thought that has a willfully — Actually — A willful — a willful requirement in it, whereas 554 has a knowing requirement. Isn't there a difference? There is a difference, Judge. But I think — well, the Fifth Circuit, I believe, specifically didn't adopt the willful But certainly, with 554A in conjunction with 2778, it is a knowing requirement. And it is a knowing that you are not just transporting a good, but that you are transporting — I believe that you have to be — know that you're transporting munitions. And again, I think — you asked me why I think that this Court should adopt that position. And I don't believe that this Court has briefed this before. I think this is a case of first impression in this Court. But it's because there is — the severity, the severity of the punitive result, if you're convicted under the statute, the munitions statute, again, is severe. If you're a criminal history category 1, it's — I think it starts at 63 to 72 months or something like that. That's a huge difference from getting probation. And therefore, there has to be a knowledge of what you're dealing with. The progeny — Let me just ask you this. So 554 says knowingly exports any merchandise article or object, and doesn't specify what it is, contrary to any law. So the export of the item is contrary to any law. So are you saying that when the government identifies that the item was contrary to a law, so including, like, environmental, endangered species, whatever, that that item, the nature of the item and the nature of the contrary to law is — has to be proved in conjunction with the 554 case? Is that your position? Yes. My position is that if it's not — if it's not just 554, but 554 in string side of which some — Well, 554 requires that the export be contrary to law. So there has to always be a law that is violated by the export. So you're saying that in every — so I just want to make sure I understand your argument, that the law that is the predicate for 554, whatever that item is, has to be proved by the government in the 554 case? Is that what you're saying? Not necessarily, but in the case specifically where it's cited with munitions, the 2778, that yes, they — Why would it only be limited to munitions when the language is general in 554? Because, again, I don't — look, for instance, with the drug trafficking codes, you only have to prove that you are transporting an item, it's a controlled substance, and you knew — and it turns out to be that it was a controlled substance. It doesn't matter if it was methamphetamine. It doesn't matter if it was heroin. It doesn't matter if it's cocaine. It doesn't matter if it's marijuana, although there are huge amounts of difference. And then it becomes in the weight. I think in this case, because — again, this goes back to, I think, fundamental fairness and the reasonableness of the statutes. If you're convicted under 554A alone, you know, that's — There is no alone, though, right? Because the one element is contrary to any law, export of an item contrary to any law. So there's always a predicate. Okay, but what if Mr. Rivera, in this case, was transporting reams of paper or T-shirts or something that wasn't — Is that contrary to law? No. Well, then he couldn't be convicted under 554. But I think that, again, if you're — actually, may I reserve? If you're through answering Judge Acuda's question, statement, go ahead. I think that, again, I think it comes down to when cited with — and this is the proposition that Cardenas held, and I know that's not binding on this Court, but it certainly should be persuasive. When in conjunction with munitions, which is an incredibly high base offense level, the defendant needs to know that he's exporting munitions. I think that's what the proposition of Cardenas' court said. I think that's what this Court should adopt. And I would appreciate reserving the remainder of my time. That's fine. Good morning, Your Honors. Angela Woolridge, appearing on behalf of the United States. In this case, the jury instructions, especially as taken as a whole, were not misleading or inadequate to guide the jury's decision with regard to the offense of Title 18, United States Code, Section 554a. And I think it is important to make the distinction that is what the defendant was charged with and that is what he was convicted in. While in the indictment, which is included on pages 1 and 2 of the excerpts, does cite as a two-wit, among other things, Title 22 of United States Code, Section 2778, as well as certain provisions of the Code of Federal Regulations, again, that is the two-wit to put the defendant on notice of what underlying violations or what predicate violations make munitions unlawful to be exported from the United States. But the charge that he was charged with and convicted of being in violation of was, in fact, 18 U.S.C. 554a. And I think that is the important distinction to be made there. I think that Cardenas, while not controlling, what it does tell us specifically, because the issue it specifically addressed, is whether charging 22 U.S.C. Section 2778 as the underlying or predicate law that export is in violation of does not confer the mens rea of willfulness onto a Section 554a violation. And I think that that is appropriate. It does reflect correctly the mens rea in the language of the statute for Section 554a. So I would submit to the Court that we can take that from Cardenas as being appropriate that that was the issue that was addressed in Cardenas. But as pointed out, Cardenas did not specifically address whether the defendant had to have the specific knowledge of the exact precise definition of the items. It was not in dispute, as pointed out in Cardenas, that the defendant knew he was transporting ammunition. It was simply disputed whether he had to prove willfulness, which the Court rejected that argument. Here, there the issue at trial was whether the defendant knew he was transporting ammunition, and the jury instructions appropriate, even if the government was required to prove ammunition, that the defendant knew it was ammunition, the government's, I'm sorry, the Court's instructions were certainly sufficient in that regard. Roberts. Is that because the instructions mention the munitions list? Correct, Your Honor. It mentioned the munitions list as well as specifically the inclusion of ammunition for firearms on the munitions list. In the same instruction, that pointed out the elements of the offense. Now the government offered proof that there was no export license? Did the government offer proof? Yes, yes. In fact, the one, Agent Chavez, testified that there was an inquiry conducted that the defendant did not have a license to export ammunition. And I would also submit, of course, there was the evidence that he was doing this in a covert smuggling manner, hidden in the spare tire underneath a vehicle, talking about getting paid $500 to take it across the border, things of that matter that also corroborated the fact that he didn't have an export license. Certainly, his actions were consistent with that. But not only, to answer your question, Judge Pius, not only was the munition specified in that same instruction that has the elements, there was another instruction given, the deliberate ignorance or ostrich instruction, which is included on page 340 of the excerpts. And that instruction specifically said that the jury may find requisite knowledge if they find that the defendant was aware of a high probability of the items listed in the indictment were in his automobile, and that they may not find such knowledge if they find that he actually believed that no items listed in the indictment were in his automobile. The indictment was read to the jury. The indictment was sent back to the jury. And the indictment only lists ammunition. The ammunition is the only item listed in the indictment. So the jury was specifically instructed, and as this Court has told us in the Anderson and Hoffice cases that we look at the jury instructions as a whole taken together, the jury was specifically instructed in that deliberate ignorance instruction that they can't convict the defendant if they find that he didn't have knowledge or at least belief that that ammunition, the items in the indictment, were in his automobile. So taken as a whole, Your Honors, the jury instructions were in fact sufficient to require the jury to prove knowledge. When was the defendant notified that you were just going to rely on the Federal regulation as the basis for the contrary to Prong? The defendant was notified of the Code of Federal Regulations in the indictment. Right. But at some point, as he was arguing, you list them all together, 185548, 22 U.S. C. 2778, 22 CFR 121.1, and 123.1. But at some point, you made a decision that you're just going to rely on the fact that you didn't have a license. I believe that the proposed jury instructions were submitted that cited the Code of Federal Regulations. Usually, those are submitted about 30 days prior to trial. Certainly, they were formulated and given to counsel prior to the beginning of the court's preliminary instructions, which included the CFR, the Code of Federal Regulations. That was read to the jury during voir dire, were given to counsel prior to voir dire, I believe. So the defendant was put on notice, at least prior to the beginning of trial, that the Code of Federal Regulations would be the predicate or the two-wit violation or, I'm sorry, the predicate regulation that would be used. But that said, Your Honor, I don't — I think it perhaps is a distinction without a difference, because in either way, the issue here was his knowledge of whether his ammunition — and, quite frankly, when he gained that knowledge, whether it was — Before? Before the tire fell off, after it fell off, whether he did anything in furtherance as it was the government's position, even after the tire fell off and there was ammunition spilling from it, gashing from it, he spent considerable time still trying to pick it up and take it across the border. So even that fact alone would prove — because that is an act in furtherance of an attempt to export ammunition, which are acts covered by 18 U.S.C. 554. And so that leads me to my last point, that even if there was some deficiency with the jury instructions, which we do believe taken in their totality were, in fact, sufficient, that even if there was some deficiency, the evidence here was overwhelming. We have, first of all, just the fact that the defendant is the driver and sole occupant of the vehicle. And it's reasonable to presume that people do have knowledge of what's inside their vehicles, what they are transporting. We have the fact that immediately the defendant shows signs of consciousness of guilt. After passing no less than three signs that expressly state it's illegal to take ammunition into Mexico, he's seen covering his face when he goes past the clearly positioned camera. This is someone who's a regular border crosser who crosses multiple times a day and is — certainly, we can presume, has awareness of the prominently displayed cameras. We have the video showing the defendant backing up to the tire, backing up in — basically going back in a lane of traffic rather than pulling off, showing knowledge that he knows that that tire is very heavy, be it that it's loaded with over 5,000 rounds of ammunition. We have him on video for some time while the ammunition is spilling from the vehicle trying to lift the tire and put it back into his car. We have the fact that here now, after he's unsuccessful in doing so, tries to cross over on foot the same day with his brother driving the vehicle. And when further unsuccessful, this regular border crosser who was crossing multiple times a day doesn't cross for over three weeks. So the evidence there was overwhelming. Then when he does finally cross, he states to the agents that he was transporting ammunition. In fact, when they asked him, why would you choose to transport weapons and ammunition, he corrects them and says it was ammunition, showing an intimate knowledge of exactly what was inside the tire. He says that he did it for money. He said he took a great risk because he was desperate for money. He never disputed his knowledge or when that knowledge occurred or never indicated any prize to find out that it was in fact ammunition in the tire. So at the end of the day, the evidence was overwhelming that the defendant did have knowledge of that ammunition. And there were no other items that were referred to either in the instructions, in argument, in any of the evidence that the jury could have found that the defendant instead was intending to export. So I would submit that not only was the government not required to prove the precise identification or knowledge of the precise identification of the items, that the jury instructions were in fact sufficient and in any event, any error would be harmless in light of all the evidence presented. Roberts. Thank you, counsel. Can you tell me what the specific mens rea charge was that the defendant requested and the district court declined to give? We asked for, if my memory serves, we asked for that the defendant, that the court require the jury to, that the defendant has specific knowledge that he had ammunition before and while he was attempting to cross and there is not. We disputed facts, as the government said. When he, the first time we believe he ever knew that there was a knowledge of it, this tire fell off. He approached it. He realized because there was a gash and what was in there. Under that charge, isn't there sufficient evidence in the record to satisfy reasonable doubt standard? Not at all, Judge. Not at all. First of all, our theory of the case, as I indicated in my opening brief in my reply, was that he understood that it was cash. He only corrected, and the first time he learned that there was ammunition there was when it fell out and there was a gash. And then he tried to remove it off the road, not to continue transferring it into Mexico. He abandoned. He abandoned the conspiracy at that point. But the counsel just argued he tried to put the tire back on the truck. And wasn't there photo evidence of that? Video surveillance? There is video. I don't think, I mean, that's the government's point of view. I don't think that's the jury's point of view, was it? I don't think so. That was the judge's point of view, and that's why the judge refused to give the instruction. And, you know, jury instructions are a fundamental piece of a fair trial. Proper jury instructions ensure that 12 laypersons appropriately apply law that many of them otherwise wouldn't understand. And the intersection of 18 U.S.C. 554 with 2778 with the CFRs is a complex web. It makes it more important that they're instructed properly. And Mr. Rivero contends that the first time that the government is required to prove specific intent that he did not know. All right. Okay. Your time is up. All right. Well, thank you. I appreciate your arguments. We've read all the briefs, and we're very familiar with the case. Thank you. Thank you very much. And thank you for your helpful arguments. The matter is submitted at this time. Our next case for argument is Sprawl Deaf v. Federal Emergency Management Agency.
judges: Paez, Ikuta, Vitaliano